Receipt number AUSFCC-11043998

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FAITH ENTERPRISES INCORPORATED, | * * * | |
| *Plaintiff,* | * * | 26-140 C |
| v. | * * | Case No. _____ |
| | * * | |
| UNITED STATES OF AMERICA, | * * | |
| *Defendant.* | * * * | |

## COMPLAINT

For its Complaint against the United States of America, acting through the U.S. Department of Veterans Affairs ("VA" or "Defendant"), Plaintiff Faith Enterprises Incorporated ("Faith" or "Plaintiff") alleges as follows:

## NATURE OF THE ACTION

1. This is an action against the United States, acting through the VA, brought pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101 *et seq.* (the "CDA").

2. This case arises from a project to construct a Post-Traumatic Stress Disorder Psychiatric Residential Rehabilitation Treatment Program Building located at the VA Medical Center in Aurora, Colorado (the "Project").

3. Unbeknownst to Faith when it submitted its bid on the work, the VA put the Project out to bid with mothballed specifications that were over ten years old. And while the VA hired a design firm to complete the Project specifications, they were still riddled with errors, omissions, and inconsistencies.

1

4. Not surprisingly, Faith was forced to submit hundreds of Requests for Information ("RFIs") during the Project to clarify and correct various aspects of the VA's design. The VA's responses to the RFIs were consistently late and incomplete. As a result, the Project experienced more than _two years_ of Government-caused delays, causing the Project costs to balloon from approximately $15 million to over $20 million.

5. Rather than accept responsibility for its defective design, and work cooperatively with Faith to complete the Project in good faith, the VA repeatedly sought to foist blame for the incomplete design onto Faith's shoulders.

6. The United States is liable to Faith for damages to be proven at trial, plus interest pursuant to 41 U.S.C. § 7109, costs, and such other and further relief as the Court deems just and proper. Accordingly, and for the reasons stated below, Faith files this action to recover its costs and damages from the additional work.

## PARTIES AND JURISDICTION

7. Faith is a Colorado corporation with its principal place of business in Colorado Springs, Colorado.

8. Defendant is the United States of America, acting in its contractual capacity through the U.S. Department of Veterans Affairs.

9. On April 9, 2025, Faith submitted a certified claim to the VA (the "Certified Claim") pursuant to the CDA. The Certified Claim sought an equitable adjustment to the contract price exceeding $100,000 arising from Government-caused delays, defective design and specifications, and changes to the work.

10.     On September 26, 2025, the VA issued the Contracting Officer's Final Decision (the "COFD") denying the Certified Claim in its entirety.

11.     This action is timely filed pursuant to 41 U.S.C. § 7104(b)(1). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491.

GENERAL FACTUAL ALLEGATIONS

I.     The VA Procures the Project Design and Issues the Construction-Phase RFP

12.     On or about August 26, 2020, the VA issued Request for Proposal ("RFP") No. 36C25920R0038 for the Project—specifically, for the construction of the Psychiatric Residential Rehabilitation Treatment Program ("PRRTP Facility") building at the Rocky Mountain Regional VA Medical Center in Aurora, Colorado.

13.     To deliver the Project, the VA utilized a traditional design-bid-build project model. Under this model, the VA contemplated hiring an architecture firm to complete the Project design (including construction documents and specifications), before soliciting competitive bids from contractors to award a contract for construction activities associated with the Project.

14.     With regard to the PRRTP Facility, the VA previously obtained Project design and specifications to approximately 90% completion in or around 2009, before shelving the Project for nearly a decade.

15.     In 2018, the VA awarded a contract to architect/design firm, Valhalla Engineering Group, LLC ("Valhalla"), Task Order No. 36C25919N0243, to complete and refresh the PRRTP Facility design, as well as to support the construction contractor (in this case, Faith). The task order specifically required Valhalla to assist the VA in responding to RFIs.

II. <u>The VA Awards the Contract to Faith</u>

16. On September 30, 2020 (following an abbreviated design and re-design phase with Valhalla and RFP), the VA awarded Contract No. 36C25920C0173 (the "Contract") to Faith on a firm-fixed-price basis in the amount of $14,967,500. The Contract required Faith to furnish all supervision, quality control, materials, labor, and services necessary to construct the PRRTP Facility in accordance with the VA's supplied design and specifications.

17. The Contract incorporates Federal Acquisition Regulation ("FAR") clauses that require the VA to compensate Faith for delays associated with design errors and for the costs associated with Government-directed changes. These include the Suspension of Work clause (FAR 52.242-14), which requires the VA to compensate Faith for delays from defective specifications, and the Changes clause (FAR 52.243-4), which requires the VA to provide an equitable adjustment for any Government-directed changes that increase the cost or time of its contractor's performance.

18. Importantly, under the express terms of the Contract, and in accordance with the design-bid-build project delivery model, the VA retained all design responsibility and warranted the design's adequacy and constructability.

19. Following the VA's award of the Contract, it issued Faith a Notice to Proceed ("NTP") on October 16, 2020, with a contractual completion period of 540 calendar days. This created a substantial completion deadline under the Contract of April 9, 2022.

20. Unfortunately, because of the VA's patchwork design process, the Project was rife with systematic design deficiencies requiring Faith to submit approximately 370 RFIs and over 150 Change Order Requests ("CORs") throughout its performance of the Contract.

21.     Shortly after award, Faith began encountering errors, omissions, and conflicts in the VA's drawings and specifications, which required Faith to submit hundreds of RFIs to obtain clarifications necessary to perform the work.

### III.    Defective Design and Government-Caused Delays

22.     Faith repeatedly notified the VA that delayed and incomplete responses to RFIs were impeding progress and threatening schedule performance of the Project.

23.     For example, on September 15, 2021, Faith provided written notice to the VA outlining several of the errors and defects that it had discovered in the Project design.  The notice further informed the VA that its slow responses to RFIs were impacting Faith's ability to meet the critical path schedule to timely complete the Project.

24.     On April 27, 2022, Faith sent another notice detailing the continued impediments to Faith's work caused by the VA's defective design and the substantial volume of outstanding RFIs without response.

25.     Despite these repeated inquiries from Faith, the VA failed to comply with its obligations under the Contract to provide timely clarifications or corrections.  As a result, the VA repeatedly impeded the critical path of Faith's work causing substantial delays to the completion of the Project.

26.     By April 27, 2022, approximately 18 months after the NTP, Faith submitted more than *350 RFIs* to the VA regarding various aspects of the Project.  Many of these RFIs concerned foundational issues in the VA's design for the Project.  As became a systemic pattern, the VA either provided insufficient responses to the RFIs, or provided no response whatsoever within the time required.

27.     The VA's pattern of delays was consistent and substantial. Throughout the construction work, Faith received an average of more than five potential design impacts every week. The VA ultimately failed to respond timely to 266 RFIs, which required a 14-day response, and to more than 25% of Faith's submittals, which required a 21-day response.

28.     Importantly, the VA was contractually obligated to meet these deadlines under Contract Specifications Section 01 33 23 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES at 1.10 (VA Review of Submittals and RFIs).

IV.     The VA's Steam-System Failure Leads to Major Delay

29.     Among multiple sources of Government-caused delays was the VA's failure to provide required steam service at the Project site. This delay in particular caused Faith to incur significant additional costs and impacted the Project schedule.

30.     Though less ubiquitous than electricity or natural gas, many structures (including the PRRTP Facility) use steam as a basic utility. Steam is produced centrally and delivered through the structure by pipes to heat the building. Like electricity, sewage, and water, it plays an integral part in the daily operation of the facility.

31.     On September 6, 2023, Faith requested that steam be turned on in advance of commissioning the Project (scheduled to begin on November 13, 2023) because the Project simply could not start without it.

32.     On or about September 13, 2023, however, the VA notified Faith of a steam leak in the existing line. Despite this, the VA failed to repair the steam leak in a timely manner. The VA completed repairs on or about March 11, 2024—approximately 179 days after the steam leak discovery and approximately 119 days after steam was required for commissioning the Project.

33. As a result of the steam outage, Faith provided temporary heat to prevent freezing during the winter months at the Project site. This process significantly impaired efficient performance of interior finish and other work, including drywall, painting, fixture installation, HVAC, plumbing, and electrical trim.

34. The steam-system failure required Faith to perform significant mitigation work, causing additional delays and costs.

V. Faith's Successful Project Completion and the VA's Failure to Pay for its Work

35. The VA's steam delay was but one of many issues. Over the life of the Project, the VA issued numerous modifications to the Contract extending the period of performance by 783 calendar days, more than doubling the original Contract completion period.

36. The VA expressly recognized compensable delays and paid Faith extended general conditions for certain delay periods, including through November 27, 2023.

37. Despite recognizing the existence of compensable Government-caused delays, the VA remarkably refused to compensate Faith for the all the delays and associated impacts.

38. As of the Certified Claim submission date, Faith incurred uncompensated delays and impact costs for at least 385 additional calendar days of extended performance, along with related subcontractor impacts, material escalation, storage, and extended overhead.

39. In addition to delays from defective design and late clarifications, the VA directed changes to the work under the Contract. These changes further increased Faith's costs and time for performance, including, among others: (i) new blast framing requirements; (ii) added asphalt paving; (iii) temporary heat requirements due to Government-caused steam issues; (iv) vestibular header framing; and (v) metal ceilings in the lobby.

40. By way of example, as to the blast framing requirements, Faith submitted at least 24 separate RFIs dealing with missing framing details, which were incorporated via modifications to the Contract. These changes were added to the Contract on or about July 28, 2023, and due to the VA's delay, blast framing work (which had to be completed before walls could be closed up and finished) was ongoing through January of 2024.

41. Faith submitted numerous CORs documenting increased costs to account for the VA's changes to the Contract. The VA processed several modifications but failed to compensate Faith for all work directed and, in some instances, made errors or improperly excluded valid costs, leaving an unpaid balance on several modifications.

42. The VA ultimately took beneficial occupancy of the Project on June 7, 2024. Even though Faith still had work to do to finish the Project, the VA started moving furniture into the building and allowing follow-on contractors to access the Project.

43. After moving into the building, the VA issued multiple punch lists and modifications. The VA repeatedly added new, extracontractual items to Faith's scope of work.

44. For example, once the VA started using the building, Faith discovered another design error that prevented the temperature from regulating correctly. As a result, the VA directed Faith to install a solution in the HVAC system. Yet again, after discovering additional flaws in its design, the VA directed Faith to fix the issue without additional compensation.

45. The VA's pattern of delaying the critical path of Faith's work continued through the end of the Project.

46. Indeed, the VA took beneficial occupancy of the building before Faith completed critical commissioning work. The VA compounded this interference by allowing other

contractors to make Project modifications while simultaneously adding new work for Faith through punch list items. This interference caused an additional 273 days of delay at the tail end of the Project.

VI.     Faith's Submission of Certified Claim and the VA's COFD

47.     On April 9, 2025, Faith submitted the Certified Claim to VA seeking an equitable adjustment in the sum certain amount of $5,878,166.

48.     The Certified Claim included detailed narrative, legal bases, and supporting exhibits for subcontractor impacts (including detailed backup, invoices, and CORs), material escalation, storage, and extended overhead, as well as the unpaid modification amounts.

49.     On September 26, 2025, the VA issued the COFD, denying the Certified Claim in its entirety. The COFD incorrectly contended that Faith had failed to provide schedule analysis of critical path impacts, and claimed that Faith released unpaid amounts due and owing for modifications. It also wrongfully rejected escalation and storage costs from Faith's subcontractors, despite the VA's recognition of compensable delays and Faith's documented cost increases during that time.

50.     In short, despite its issuing the RFP, Contract, and NTP before it obtained a design that was anywhere near ready for construction, and despite its blatant pattern of delaying the Project through untimely responses, patchwork changes, and ever-changing punch lists, the VA's COFD tried to pin the blame (and the costs) of the VA's failures on Faith.

COUNT ONE
DEFECTIVE DESIGN (*SPEARIN* DOCTRINE)

51.     Faith incorporates the preceding paragraphs by reference as though fully set forth herein.

52. The VA warranted the adequacy of the design and specifications it furnished for the Project.

53. In *United States v. Spearin*, 248 U.S. 132 (1918), the Supreme Court held that where a contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications.

54. Delays caused by defective specifications are *per se* unreasonable and compensable under the Suspension of Work clause (FAR 52.242-14) and related authorities. *See, e.g.*, *Neal & Co. v. United States,* 36 Fed. Cl. 600, 627 (1996) (citing *Westerhold v. United States*, 28 Fed. Cl. 172, 174 (1993)).

55. The VA's design of the Project was incomplete. The drawings and specifications contained numerous errors, omissions, and defects that required correction prior to Faith completing its work, as alleged herein.

56. Faith reasonably relied upon the VA's warranty of the adequacy of the drawings and specifications when preparing its bid.

57. Faith's bid was based on the reasonable expectation of receiving complete and accurate design documents from the VA that would result in the constructability of the Project based on the supplied drawings and specifications.

58. Despite these errors, omissions, and defects, Faith diligently prosecuted the work, provided timely notice to the VA of design defects and delays, and submitted RFIs and CORs with adequate supporting documentation.

59. The VA's assertion that Faith was concurrently delayed or failed to substantiate critical path impact is contrary to the VA's own modifications granting substantial time extensions and compensable delay periods, and it ignores the VA's responsibility for defective design.

60. Faith complied with all conditions precedent under the Contract and applicable law in submitting claims as the result of cost and time impacts.

61. The VA has breached its obligations under applicable law and the Contract by failing to compensate Faith for the full amount of these costs and damages.

62. As a result of the VA's design defects and defective specifications, Faith incurred damages and additional cost and time impacts completing the Project.

COUNT TWO
FAILURE TO COMPENSATE FAITH FOR GOVERNMENT-CAUSED DELAY
(SUSPENSION OF WORK CLAUSE (FAR 52.242-14))

63. Faith incorporates the preceding paragraphs by reference as though fully set forth herein.

64. The Contract is an enforceable agreement as between the VA and Faith.

65. Faith substantially performed its obligations under the Contract.

66. The Contract incorporates FAR 52.242-14, the Suspension of Work clause. That clause provides that, if the performance of all or any part of the work is suspended or delayed by the Contracting Officer in the interest of the VA, or by failure of the VA to act within the time specified in the Contract, an adjustment shall be made for any increase in the cost of performance of the Contract.

67. The VA constructively suspended Faith's work by failing to provide timely responses to RFIs and by providing defective specifications that prevented Faith from performing work at the Project as planned.

68. Specifically, the VA failed to respond timely to hundreds of RFIs and over 25% of submittals that Faith submitted on the Project.

69. The VA further suspended Faith's work by failing to provide required steam service at the Project site for approximately 179 days after discovering the steam leak, despite Faith's request for steam service in advance of commissioning.

70. Throughout the performance period, Faith was ready, willing, and able to proceed with the work, but was prevented from doing so by the VA's failure to provide timely clarifications, corrections, and required utilities.

71. Faith provided timely written notice to the VA of these suspensions and delays.

72. The suspensions were unreasonable and not the fault of or concurrent delay attributable to Faith.

73. As a direct result of these Government-caused suspensions, Faith incurred additional costs including extended general conditions, subcontractor impacts, material escalation, storage costs, and other delay-related expenses.

74. Faith complied with all conditions precedent under the Contract and applicable law in submitting its certified claim for these suspension-related costs and time impacts.

75. Despite the VA's obligation under FAR 52.242-14 to provide an equitable adjustment for suspension-related costs, the VA failed to compensate Faith for the full amount of these damages.

76. The VA's denial of Faith's certified claim for suspension-related costs constitutes a breach of the Contract.

COUNT THREE
<u>FAILURE TO COMPENSATE FAITH FOR CHANGES TO THE WORK
(CHANGES CLAUSE (FAR 52.243-4))</u>

77. Faith incorporates the preceding paragraphs by reference as though fully set forth herein.

78. The Contract is an enforceable agreement as between the VA and Faith.

79. Faith substantially performed its obligations under the Contract.

80. The Contract incorporates FAR 52.243-4, the Changes clause. That clause requires the VA to make an equitable adjustment in the Contract price and/or time when Government-directed changes increase the contractor's cost or time of performance.

81. Throughout the Project, the VA directed numerous changes to the work outside the original Contract scope, including, new blast framing requirements, added asphalt paving, temporary heat requirements due to VA-caused steam issues, vestibular header framing, metal ceilings in the lobby, and HVAC system modifications after beneficial occupancy.

82. Additionally, after taking beneficial occupancy, the VA repeatedly added new, extracontractual items to Faith's scope of work through multiple punch lists and modifications.

83. Faith submitted numerous CORs documenting increased costs for these changes with detailed backup, invoices, and supporting documentation.

84. The VA processed several modifications but failed to compensate Faith for all work resulting from its directed changes. In some instances, the VA made errors or improperly excluded valid costs.

85. Faith is entitled to recover increased costs caused by Government-directed changes, including subcontractor impacts, material escalation, storage costs, and extended general conditions.

86. Faith complied with all conditions precedent under the Contract and applicable law in submitting its certified claim for change-related costs.

87. Despite Faith's performance of all directed changes, the VA breached the Contract by failing to compensate Faith for the full amount of these costs and damages.

88. Faith is entitled to recover increased costs caused by Government-directed changes, including subcontractor labor and material escalation, storage costs, and extended general conditions. *See, e.g., George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 229, 242–45 (2005).

## COUNT FOUR
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

89. Faith incorporates the preceding paragraphs by reference as though fully set forth herein.

90. The Contract is an enforceable agreement as between the VA and Faith.

91. Faith substantially performed its obligations under the Contract.

92. Every contract with the United States contains an implied covenant of good faith and fair dealing prohibiting either party from doing anything that would deprive the other party of the benefits of the agreement.

93. The VA breached its duty of good faith and fair dealing through a pattern of conduct that frustrated Faith's ability to perform the Contract efficiently and obtain the benefits of its bargain.

94. The VA's conduct demonstrated a deliberate disregard for Faith's contractual rights and reasonable expectations.

95. Faith reasonably expected to perform construction work based on adequate design documents and to receive timely responses to necessary clarifications, consistent with industry standards and the Contract terms.

96. The VA's conduct deprived Faith of the benefit of its bargain by substantially increasing performance costs and duration beyond what Faith could have reasonably anticipated when entering the Contract.

97. As a direct result of the VA's breach of the implied covenant of good faith and fair dealing, Faith suffered damages including increased costs, extended performance time, and lost efficiency.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Faith respectfully requests that the Court enter judgment in its favor and against the United States and award the following relief:

1. For Counts One through Count Four of the Complaint, damages in the amount to be proven at trial;

2. Interest pursuant to 41 U.S.C. § 7109 from April 9, 2025, to the date of payment;

3. Costs of this suit;

4. Reasonable attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, or as otherwise warranted under law; and,

5. Such other and further relief as the Court deems just and proper.

Dated: January 28, 2026

Respectfully submitted,

 /s/ *Shaun C. Kennedy*
Shaun C. Kennedy
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
T: 303-295-8000
sckennedy@hollandhart.com

*Counsel of Record for Plaintiff*
*Faith Enterprises, Incorporated*

*Of Counsel*:

Thomas A. Morales
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
T: 303-295-8000
tamorales@hollandhart.com

William G. Cason
HOLLAND & HART LLP
420 L St., Suite 550
Anchorage, Alaska 99502
T: 907-865-2600
wgcason@hollandhart.com

36904441